[Cite as *In re D.B.M.*, 2016-Ohio-2797.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

IN THE MATTER OF:  D.B.M.,  :  **O P I N I O N**
DELINQUENT CHILD

:

 **CASE NO.  2015-G-0018**

:

Appeal from the Geauga County Court of Common Pleas, Juvenile Division, Case No. 14 JD 000191.

Judgment: Affirmed.

*James R. Flaiz,* Geauga County Prosecutor, and *Katherine A. Jacob,* Assistant Prosecutor, Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH  44024 (For Appellee, State of Ohio).

*Margaret L. Brunarski,* 302 South Broadway, Geneva, OH  44041 (For Appellant, D.B.M.).

CYNTHIA WESTCOTT RICE, P.J.

{¶1}    Appellant, D.B.M., a juvenile, appeals from the trial court's judgment classifying him as a Tier II juvenile sex offender.  Appellant contends the timing of the trial court's classification order was premature to the extent it occurred prior to, rather than after, his release from a secure facility in violation of R.C. 2152.83(A)(1); appellant further contends that even if the proceedings were timely, the classification violated his constitutional right to be free from double jeopardy.  For the reasons discussed below, we affirm.

{¶2} On May 14, 2014, a complaint was filed against appellant charging him with one count of pandering obscenity involving a minor, in violation of R.C. 2907.321(A)(1), a felony of the second degree, if committed by an adult; one count of illegal use of a minor in nudity oriented material or performance, in violation of R.C. 2907.323(A)(1), a felony of the second degree, if committed by an adult; one count of pandering obscenity involving a minor, in violation of R.C. 2907.321(A)(5), a felony of the fourth degree, if committed by an adult; one count of illegal use of a minor in nudity oriented material or performance, in violation of R.C. 2907.323(A)(3), a felony of the fifth degree, if committed by an adult; and one count of possessing criminal tools, in violation of R.C. 2923.24(A), a felony of the fifth degree, if committed by an adult. The possessing criminal tools charge contained a forfeiture specification, pursuant to R.C. 2941.1417. Appellant entered a plea of "not true" to all charges.

{¶3} On November 17, 2014, a pre-trial was held and appellant entered a plea of "true" to pandering obscenity involving a minor, in violation of R.C. 2907.321(A)(5), a fourth-degree felony, if committed by an adult; pandering sexually oriented matter involving a minor, in violation of R.C. 2907.322(A)(5), a fourth-degree felony, if committed by an adult; illegal use of a minor in nudity oriented material or performance, in violation of R.C. 2907.323(A)(3), a fifth-degree felony, if committed by an adult; and possession of criminal tools, with the forfeiture specification, in violation of R.C. 2923.24(A), a fifth-degree felony, if committed by an adult. The trial court granted the state's motion to dismiss the remaining counts.

{¶4} On February 18, 2015, a disposition hearing was held, after which appellant was placed in the Portage Geauga Detention Center ("PGDC") for a total of

2

180 days, beginning February 20, 2015. The trial court further committed appellant to the Department of Youth Services ("DYS") for a minimum time of 6 month to a maximum of age 21. The commitment to DYS was suspended on condition that appellant obey court orders and laws of the state until age 21. The court scheduled a review hearing for April 15, 2015. It notified the parties that "offender registration may be considered at that hearing."

{¶5} On April 15, 2015, appellant filed a "motion for temporary custody to the Geauga County Department of Job and Family Services" ("GCDJFS") and a "motion for early release from [PGDC]." Together, the motions requested the court for an order granting him early release from PGDC so he may begin residential treatment at the Safely Home. Appellant asserted it was in his best interests to be released early so he may begin residential treatment at the facility. Appellant's guardian ad litem, probation officer, and mother each supported the request.

{¶6} On the same date, the trial court held a "post-dispositional review hearing." The court subsequently ordered appellant to be released from PGDC on April 17, 2015, "to the custody of his mother, * * * who shall transport him to Safely Home. The balance of his commitment to PGDC shall be suspended on the condition that he successfully complete treatment at Safely Home and all recommended aftercare." The court further granted the motion for temporary custody to GCJFS, effective April 17, 2015.

{¶7} The court also held a juvenile sex offender registration hearing, classifying him as a Tier II juvenile sex offender. While counsel for appellant objected on double jeopardy grounds, she did not object to the classification level or the timing of the

3

classification. The court overruled the constitutional objection and fully advised appellant of the nature of the classification and his statutory obligations pursuant to the classification. He now appeals, assigning the following error:

{¶8} "The trial court erred to the prejudice of the juvenile appellant when it classified the juvenile-appellant as a juvenile sex offender registrant in violation of the Ohio Revised Code and the United States and Ohio Constitutions."

{¶9} Appellant first asserts the trial court erred to his prejudice when it classified him prior to his release from a secure facility in violation of R.C. 2152.83(A)(1). As this is an issue of law, we review it de novo. *In re T.W.*, 11th Dist. Ashtabula No. 2015-A-0013, 2015-Ohio-5213, ¶10.

{¶10} The parties do not dispute that appellant was subject to the dictates of R.C. 2152.83(A)(1) vis-à-vis the juvenile sex-offender classification order. R.C. 2152.83(A)(1) states:

{¶11} The court that adjudicates a child a delinquent child shall issue as part of the dispositional order or, if the court commits the child for the delinquent act to the custody of a secured facility, shall issue at the time of the child's release from the secure facility, an order that classifies the child a juvenile offender registrant and specifies that the child has a duty to comply with [certain] sections * * * of the Revised Code if all of the following apply: * * *.

{¶12} Unlike R.C. 2152.83(B), which affords the court discretion as to when to classify a juvenile offender, "an offender, such as appellant, that is subject to the proceedings defined under R.C. 2152.83(A)(1) may *only* be classified 'at the time of [his or her] release from the secure facility' to which he or she was committed at the dispositional hearing." (Emphasis in original.) *In re J.A.D*, 11th Dist. Portage No. 2012-P-0006, 2012-Ohio-5226, ¶14.

4

{¶13} R.C. 2950.01(K)(1) defines a "secure facility" as "any facility that is designed and operated to ensure that all of its entrances and exits are locked and under the exclusive control of its staff and to ensure that, because of that exclusive control, no person who is institutionalized or confined in the facility may leave the facility without permission and supervision."

{¶14} Appellant contends the court classified him on April 15, 2015. Appellant further asserts that, even though he was technically released from PGCD on April 17, 2015, he was placed in the temporary custody of GCDFJS to receive treatment at Safely Home. Appellant maintains Safely Home is a secure residential treatment facility and, as a result, the trial court erred in prematurely entering the classification order. We do not agree.

{¶15} Appellant's counsel moved for early release from PGCD because appellant was accepted into Safely Home. The parties agree that PGCD was a "secure facility" from which appellant was legally released on April 17, 2015. There is nothing in the record, however, indicating that Safely Home is a secure facility.

{¶16} Because appellant moved the court for placement at Safely Home, appellant's counsel could have introduced evidence via affidavit appended to the motion or presented evidence at the post-dispositional hearing to demonstrate it was a "secure facility." Counsel did not do so. Moreover, in the motion for early release, appellant's counsel represented that Safely Home is a residential treatment facility. We find no authority to support the proposition that a "residential treatment facility" is synonymous with a "secure facility." To the contrary, this court has observed that the former does not necessarily meet the statutory definition of the latter. To wit, in *In re Thrower*, 11th Dist.

5

Geauga No. 2008-G-2813, 2009-Ohio-1314, this court noted, "[w]hile ingress and egress is controlled by the staff, the [residential treatment] facility is not locked down, which the statute requires." ¶10. Because appellant did not introduce evidence or attempt to argue that Safely House is a "secure facility" before the trial court, we cannot conclude his transfer from PGCD to Safely House was a transfer from one "secure facility" to another. It therefore follows that appellant, at the time he was released from PGCD to his mother for transport to Safely House, was released from a secure facility. We therefore conclude the court was required to issue an order classifying appellant a juvenile offender registrant and specify his duties to comply with the relevant statutes at the time he was released from PGCD. We shall next address whether the court adequately complied with this mandate.

{¶17} The post-dispositional hearing and judgment ordering appellant's release and transfer occurred on April 15, 2015. The release and transfer was ordered for April 17, 2015. Although appellant was classified a Tier II sexually-oriented juvenile offender and advised of his obligations under the statute at the April 15, 2015 hearing, the "Juvenile Offender Registrant Classification" *order* was not filed until April 21, 2015. The order was issued after appellant's release from the secured facility.

{¶18} We recognize that the order was not issued contemporaneously with appellant's stated release date, which the statute facially contemplates. *See* R.C. 2152.83(A)(1) (the juvenile court "shall issue at the time of the child's release from the secure facility, an order that classifies the child a juvenile offender"). Under the circumstances of this case, we do not view this as a problem.

6

{¶19} In *In re B.W.*, 2d Dist. Darke No. 1702, 2007-Ohio-2096, the juvenile appellant was subject to classification under R.C. 2152.83(B)(1), which states that the court may conduct a hearing on the juvenile's classification either at the time of disposition or at the time of the juvenile's release from a secure facility. The juvenile's hearing was neither contemporaneous with his dispositional hearing nor immediately upon his release from a secure facility; rather, it was held two months after he was released from the secure facility. In concluding the trial court did not err in conducting the hearing and classifying the juvenile two-months late, the Second Appellate District observed that the phrase "'at the time of the child's release from the secure facility' necessarily incorporates a short interval of time * * * before jurisdiction is lost. Clearly, the legislature did not intend to mandate a classification simultaneous with release, but merely a reasonable time given docket constraints and appropriate time for evaluations appurtenant to classification." *B.W.*, *supra*, at ¶14.

{¶20} In this case, the trial court did not place the order on record on April 17, 2015; instead, it did so on April 21, 2015, four days after appellant's release from the secure facility. As the court in *B.W.* noted, however, the phrase "at the time of the child's release," which is the operative temporal framework at play in both R.C. 2152.83(A)(1) and (B)(1), "necessarily incorporates a short interval of time." Under the circumstances, therefore, we hold the brief, four-day lag between appellant's release and the issuance of the order was a de minimus delay. And even if the delay could be considered error, the error was harmless as appellant suffered no prejudice as a matter of law.

7

**{¶21}** Appellant next asserts the trial court erred when it classified appellant at a "post-dispositional hearing." Because the disposition had been entered, he maintains the "post-dispositional hearing" functioned to "reopen" the previously adjudicated final order. Thus, he maintains, the classification was a second punishment prohibited by the Double Jeopardy Clause of the United States and Ohio Constitutions. We do not agree.

**{¶22}** "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects against the imposition of multiple criminal punishments for the same offense in successive proceedings," and that "'[i]f a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited by the double jeopardy clause.'" *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, ¶24, quoting *United States v. Fogel*, 829 F.2d 77, 87, 264 U.S. App. D.C. 292 (D.C.Cir.1987).

**{¶23}** In *T.W.*, *supra*, this court concluded the classification process under consideration *did not* violate double jeopardy because the statute expressly provides for deferred classification until the time the juvenile is released from a secure facility. Accordingly, to the extent a juvenile, such as appellant, is committed to a secure facility, he or she has no "legitimate expectation of finality" at the time of the dispositional order. *In Re D.S.*, ___ Ohio St.3d ___, 2016-Ohio-1027, ¶25-26 (juvenile has no legitimate expectation of finality at original disposition). Accordingly, there can be no double jeopardy violation. *Id.* at ¶29 following *In re M.R.*, 7th Dist. Jefferson No. 13 JE 30, 2014-Ohio-2623.

**{¶24}** Appellant's assignment of error is without merit.

{¶25} For the reasons discussed in this opinion, the judgment of the Geauga County Court of Common Pleas, Juvenile Division, is affirmed.


TIMOTHY P. CANNON, J.,

COLLEEN MARY O'TOOLE, J.,

concur.